IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SHAFIQ IMANI,

                        Plaintiff,

  v.

SANDRA L. MCCARDLE and JEANIE M. KRAMER,

                        Defendants.

OPINION and ORDER

24-cv-822-jdp

---

Plaintiff Shafiq Imani, proceeding without counsel, alleges that defendants provided inadequate medical care for his multiple sclerosis and related symptoms. Because Imani is incarcerated, I must screen the complaint under 28 U.S.C. § 1915A and dismiss any part of it that is frivolous or malicious, fails to state a claim for which I could grant relief, or seeks money damages from an immune defendant. I must accept Imani's allegations as true and construe them generously, holding the complaint to a less stringent standard than one a lawyer drafts. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). I will dismiss the complaint for failure to state a claim for which I could grant relief, but I will allow Imani to amend the complaint to fix that problem.

ALLEGATIONS OF FACT

Imani names only Sandra L. McCardle and Jeanie M. Kramer as defendants in the complaint's caption, so I will limit the factual summary to allegations against them.

In 2018, Imani was incarcerated at Wisconsin Secure Program Facility in 2018, where McCardle was his advanced practice nurse provider.

In late October 2018, Imani experienced cold-like symptoms, which had cleared by morning. But Imani woke up with numbness and tingling in his extremities and serious abdominal pain that made him fall. Imani was transported to the hospital, where he was diagnosed with paraspinal muscle spasms, paresthesia, and upper abdominal pain.

In November 2018, Imani experienced paresthesia and fatigue, and he started dropping objects frequently. Imani told McCardle during a visit that he thought he had developed acute flaccid myelitis (AFM), which is a viral condition that causes sudden arm or leg weakness and that primarily affects children. McCardle read about AFM on the internet and advised Imani to avoid putting pressure on his wrists.

McCardle saw Imani in January 2019 about continuing complaints of tingling and numbness in his extremities, weakness, fatigue, and dropping objects. McCardle ordered blood work. Imani's vitamin D levels were low, so he received a supplement.

In April 2019, McCardle saw Imani about the same symptoms, as well as sensitivity to hot temperatures, and difficulty walking that caused him to fall. McCardle told Imani that he was "getting old" and would be okay. Dkt. 1 ¶ 24. McCardle referred Imani to neurology and ordered an electromyography (EMG) for only his legs, documenting that he had only numbness in his extremities.

The EMG was performed in late June 2019. It showed minor peripheral neuropathy in his left knee. A month later, McCardle prescribed duloxetine. Imani told McCardle during that visit that his internet research indicated that his symptoms (which also included urinary problems) were possible signs of Lyme disease, Guillain-Barré syndrome, or multiple sclerosis (MS). McCardle didn't think that Imani had MS because she didn't deem walking problems

to be serious enough to warrant that diagnosis. McCardle rejected Imani's suggestion for an MRI because she believed that his concerns were "silly, dramatic, and exaggerated." *Id.* ¶ 31.

Imani tested negative for Lyme disease. His symptoms worsened over the next year.

In August 2020, Imani was transferred to Columbia Correctional Institution, where defendant Kramer was the advanced practice nurse prescriber. Imani's symptom worsened, and he repeatedly fell while playing basketball in late October of that year. Imani received physical therapy but it was ineffective.

In late March 2021, Kramer saw Imani, and Imani told her that, based on his symptoms, he was certain that he had MS. Kramer examined Imani, performed several tests, and told him that she suspected that he had MS. Kramer said she would order an MRI to confirm her suspicion, but she ordered an EMG for his upper extremities instead. The EMG revealed no neuropathy or damage.

Kramer was transferred to Stanley Correctional Institution (SCI) in August 2021. An outside neurologist, Dr. Stanek, saw Imani in September 2021. Dr. Stanek said that he thought that Imani's October 2018 hospitalization was due to transverse myelitis. Dr. Stanek ordered an MRI, which showed multiple lesions on Imani's cervical spine "favored to be due to [MS]." *Id.* ¶ 60. Imani learned of these results on November 9, 2021. An MRI taken two days later confirmed the diagnosis of MS. A spinal tap taken in March 2022 showed that Imani has Primary Progressive MS.

ANALYSIS

Imani brings Eighth Amendment medical care and Wisconsin-law medical negligence claims. He seeks damages and declaratory relief. I will not allow Imani to proceed on his

boilerplate request for declaratory relief because "[d]eclaratory judgments are not meant simply to proclaim that one party is liable to another." *See Johnson v. McCuskey*, 72 F. App'x 475, 477–78 (7th Cir. 2003). I will consider Imani's claims for damages only.

### A. Eighth Amendment medical care claim

The Eighth Amendment prohibits prison officials from consciously disregarding the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish a medical care claim, Imani must show that he had an objectively serious medical condition that defendants consciously disregarded. *See Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017). Imani's MS and related symptoms are a serious medical need.

The primary issue is whether defendants consciously disregarded that need. Conscious disregard requires that defendants are subjectively aware of that need. *See id.* at 721. That means that defendants knew of facts from which the inference could be drawn that a substantial risk of serious harm existed, and they actually drew that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Conscious disregard involves intentional or reckless conduct, not mere negligence. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

The Eighth Amendment entitles prisoners to "adequate medical care," that is, "reasonable measures to meet a substantial risk of serious harm." *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). The Eighth Amendment doesn't require "specific care" or "the best care possible." *Id.*; *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Disagreement between Imani and defendants, or among medical professionals, about the proper course of treatment isn't enough to show conscious disregard. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).

Ignoring a prisoner's request for medical assistance outright can be enough to show conscious disregard of medical needs. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (en banc). If a medical professional has provided some care for a prisoner's condition, she consciously disregards the serious medical need only if her care is so inadequate that it demonstrates an absence of professional judgment, that is, that no minimally competent professional would have responded in that way in the circumstances. *See Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 763 (7th Cir. 2021); *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998).

1. Claim against McCardle

Imani's allegations don't plausibly suggest that McCardle consciously disregarded his MS and related symptoms. When Imani initially complained of those symptoms and told McCardle that he thought he had AFM, she did not ignore him. McCardle read about that condition and, apparently determining that he did not have it, advised him to avoid putting pressure on his wrists. McCardle also ordered blood work and provided a vitamin supplement. Imani continued to complain about his symptoms and, even though McCardle thought that they were related to age, she ordered an EMG. Imani alleges that the EMG was incomplete because it was for only his legs, but his allegations don't plausibly suggest that McCardle thought that a more comprehensive test was necessary. *Cf. Estelle*, 429 U.S. at 107 ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment."). The EMG was mostly negative for neuropathy, and McCardle prescribed duloxetine. Imani then told McCardle that he thought that he had MS, but McCardle didn't believe that his mobility problems indicated that condition. Imani faults McCardle for thinking that he was exaggerating his symptoms, but

5

his allegations suggest that she based that belief on her medical judgment. Imani was ultimately diagnosed with MS, but a mere misdiagnosis does not show conscious disregard. *Id.*

Imani also alleges that McCardle failed to treat his transverse myelitis. I will not allow Imani to proceed on this claim because it is substantively and procedurally deficient. Regarding substance, Imani's allegation that Dr. Stanek told him in September 2021 that he thought his October 2018 hospitalization was due to transverse myelitis doesn't plausibly suggest that Dr. Stanek formally diagnosed him with it. Put differently, Imani's allegations don't support a plausible inference that he ever had that condition. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . ."). Imani faults McCardle for not treating the symptoms that he thinks were caused by transverse myelitis. But those symptoms overlap with his MS symptoms and, as I've explained, Imani's allegations don't plausibly suggest that McCardle consciously disregarded them.

Regarding procedure, Imani's claim against McCardle based on her failure to treat his transverse myelitis is untimely. Imani bases it on events that happened after April 5, 2018, so a three-year limitations period applies. *See Turner v. Bonfiglio*, No. 23-cv-275-jdp, 2024 WL 3756399, at *1 (W.D. Wis. Aug. 12, 2024). The claim accrued when Imani knew "of his physical injury and its cause." *Devbrow v. Kalu*, 705 F.3d 765, 768 (7th Cir. 2013). Imani learned of the alleged cause of his symptoms in September 2021, when Dr. Stanek said that he thought his October 2018 hospitalization was due to transverse myelitis. *See id.* at 769. Imani had to bring this claim by September 2024, but he didn't file his complaint until November 2024.

6

### 2. Claim against Kramer

Imani's allegations don't plausibly suggest that Kramer consciously disregarded his MS. Kramer evaluated him, performed several tests, and told him that she suspected that he had MS. Imani alleges that Kramer didn't order an MRI to confirm her suspicion even though she promised to order one. But Imani is not entitled to his treatment of choice, and Kramer did not disregard him. Rather, Kramer ordered an EMG for his upper extremities. This was a new test; Imani's previous EMG was for his lower extremities. Imani was transferred from SCI later that year, at which time Kramer's responsibility for his care ended. *See Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012) (defendants cannot be liable under 42 U.S.C. § 1983 "if the remedial step was not within their power"). I will not allow Imani to proceed on this claim against Kramer.

### 3. Potential claims against other medical staff

Imani mentions several other medical staff members in his complaint. It's unclear whether he seeks to proceed against any of these individuals. If he does, Imani would at a minimum have to identify them by full name in the amended complaint's caption. *See Myles v. United States*, 416 F.3d 551, 551 (7th Cir. 2005).

## B. State-law medical negligence claim

Without a federal claim, the court would not have jurisdiction over Imani's state-law claim on the basis of diversity because he and defendants are Wisconsin citizens. *See* Dkt. 1 at 1, 3.

When all federal claims have been dismissed, the general practice in federal court is to decline to exercise supplemental jurisdiction over the related state-law claims. *See Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). I'll follow that practice here

and relinquish jurisdiction over Imani's medical negligence claim without evaluating its merits. Imani may replead this claim in the amended complaint.

CONCLUSION

I will allow Imani to file an amended complaint that fixes the above pleading problems. The amended complaint must be filed on the court's prisoner complaint form, which the court will send him with this order. If he needs additional space, he may include no more than five supplemental pages.

In drafting his amended complaint, Imani should remember to:

- Carefully consider whether he is naming proper defendants and omit defendants who did not personally participate in or cause a violation of his rights. Imani must take care to allege what each defendant did, or failed to do, to violate his rights.

- Imani should avoid referring to several defendants together. For instance, if more than one defendant has taken a particular action that Imani believes supports a claim, he should identify each defendant who took that action.

- Identify by full name all the individuals he wishes to sue in the amended complaint's caption.

- Omit legal arguments other than explaining what types of claims he wishes to assert.

ORDER

IT IS ORDERED that:

1. Plaintiff Shafiq Imani's complaint, Dkt. 1, is DISMISSED for failure to state a claim.

2. Plaintiff may have until June 30, 2025 to submit an amended complaint that fixes the problems identified in this order.

3. Plaintiff must file his amended complaint on the court's prisoner complaint form, which the court will send him with this order. Plaintiff must fill out the form completely. If plaintiff requires any additional space to allege his claims, he may submit no more than five supplemental pages. Any text on the form or a supplemental page must be large enough and have enough spacing between lines and in the margins for the court to read it easily.

4. The amended complaint will act as a complete substitute for the complaint. This case will proceed on only the allegations made and claims presented in the amended complaint, and against only the defendants specifically named in the amended complaint's caption.

5. If plaintiff fails to comply with this order, I may dismiss this case.

6. Plaintiff must inform the court of any new address. If he fails to do this and defendants or the court cannot locate him, this case may be dismissed.

7. Plaintiff should keep a copy of all documents for his own files. If he is unable to use a photocopy machine, he may send out identical handwritten or typed copies of his documents.

8. Plaintiff is to be sent a copy of the court's prisoner complaint form.

Entered May 29, 2025.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge