IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SHAFIQ IMANI,

Plaintiff,

v.

SANDRA L. MCARDLE, JEANIE M. KRAMER, MARIE L. HERWEIJER, MELISSA BLOCK, and LUCINDA BUCHANAN,

Defendants.

OPINION and ORDER

24-cv-822-jdp

---

Plaintiff Shafiq Imani, proceeding without counsel, alleges that prison medical staff denied him medical care for his multiple sclerosis and related symptoms. Imani is proceeding on Eighth Amendment medical care and Wisconsin-law medical negligence claims against the following defendants: Jeanine M. Kramer, Marie L. Herweijer, Melissa Block, Lucinda Buchanan, and Sandra McCardle.

Imani is currently incarcerated at Oshkosh Correctional Institution, but the events primarily occurred at two of his former prisons, Wisconsin Secure Program Facility (WSPF) and Columbia Correctional Institution (CCI). Kramer, Herweijer, Block, and Buchanan are employees of the Department of Corrections who were involved in Imani's care at WSPF or CCI. McCardle is employed by a private contractor, and she provided care to Imani at WSPF.

The state defendants and McCardle move for summary judgment, contending that Imani has failed to exhaust administrative remedies under the Prison Litigation Reform Act. Dkt. 44 and Dkt. 55. I will stay these motions and hold a hearing to determine whether Imani has made a dishonest statement and submitted a fabricated document to try to overcome defendants' exhaustion motions.

Imani has filed at least four inmate complaints potentially relevant to the issue of exhaustion, but a certain complaint, CCI-2021-11910, relates to the issues of dishonesty and fabrication. Imani filed the ’11910 complaint on August 3, 2021, while located at CCI. Dkt. 46-2 at 8. Imani wrote that since arriving at CCI he had been experiencing a “mystery ailment” that caused him difficulty walking and other types of motor impairment. *Id.* Imani also wrote that health services unit (HSU) staff had denied him medical care by not following an outside neurologist’s recommendation for an MRI. *Id.*

That day, an institution complaint examiner, Mary Leiser, returned the ’11910 complaint to Imani with instructions to attempt to resolve his issue informally. *See* Dkt. 46-2 at 2, 8, 10. Leiser instructed Imani to contact the assistant HSU manager, defendant Block, and allow her to reply before resubmitting the complaint. *Id.* at 10. On August 5, 2021, a second institution complaint examiner, Kyle Zenk, rejected the ’11910 complaint. *Id.* at 2, 8. Zenk wrote that Imani “simply returned the complaint within 2 days and did not include any written correspondence or documentation.” *Id.* at 2.

Imani’s appeal was acknowledged on August 30, 2021. *Id.* at 3–6, 11. Imani contended that the ’11910 complaint was improperly rejected. *Id.* at 11. Imani wrote that he told Leiser that he had contacted Block before he filed the ’11910 complaint but that he could not provide proof of that correspondence because, due to an impending transfer to a new prison, he was missing his personal property. *Id.* The reviewing authority rejected Imani’s appeal as untimely without expressly addressing this contention. *Id.* at 3–6.

In his combined opposition to defendants’ exhaustion motions, Imani contends that the ’11910 complaint exhausted administrative remedies for all his claims and that it was improperly rejected because he complied with the DOC’s procedures “to the best of his

abilities." *See* Dkt. 63 at 3, 18. Imani says that, when he received Leiser's rejection on August 3, 2021, he prepared a DOC-643 "Interview/Information Request" form in which he explained that he could not provide proof of correspondence with Block because he was missing his property due to the impending transfer, which was scheduled for August 5. *See* Dkt. 63 at 4–5. Imani also says that, on August 4, 2021, he spoke with Leiser as she gathered items from the institution complaint examiner's mailbox. *Id.* at 5. Those items, according to Imani, included his resubmitted the '11910 complaint and the DOC-643 request form. *Id.* Imani says that Leiser told him that she understood his situation and that she would look at those items and see what could be done. *See id.*

On August 5, 2021, Imani was transferred to Stanley Correctional Institution (SCI). Imani says that, before he could send Leiser his correspondence with Block, he "surprisingly" received Zenk's rejection of the '11910 complaint. *Id.* Imani says that Zenk's statement that he simply returned the complaint two days later without any written correspondence from the HSU is "not true." *Id.* at 6. Imani explains that the DOC-643 request form that he "enclos[ed] with [the] resubmitted complaint shows that he informed Leiser that he complied with her directives but due to [his] transfer [to SCI he] was unable to provide her with a copy." *Id.* Imani also says that Zenk's rejection fails to mention the request form or the HSU's prior letter responding to his health concerns even though both documents were "in [Zenk's] possession" and "had [been] entered into [institutional] records." *Id.* To support this statement, Imani notes that institutional records related to the '11910 complaint include copies of a purported DOC-643 request form and a purported letter from HSU staff. *See id.* (citing Dkt. 46-2 at 12–13).

The top half of the request form is filled out by Imani and dated August 3, 2021. Dkt. 46-2 at 13. He wrote that he could not provide proof of correspondence with Block because he was missing his property due to the impending transfer, which was scheduled for August 5. *Id.* The bottom half of the purported request form is signed by Leiser and dated August 4, 2021. *Id.* It says, oddly, "Provide copy of forged document." *Id.* Imani contends that Leiser's purported August 4 response indicates that the rejection of the '11910 complaint was not based on "his inability to provide . . . a copy of Block's response," but on "Leiser's questioning of the authenticity" of the letter from HSU that is included in the institutional records related to that complaint. *See* Dkt. 63 at 7. Imani says that he did not learn about Leiser's purported response until the state defendants filed their exhaustion motion. *See id.*

The state defendants contend that Imani's statement that he submitted the request form with his resubmission of the '11910 complaint on August 3 is "demonstrably false." Dkt. 69 at 10. They explain that the "Inmate Complaint Tracking System shows that this document became part of the record for [that complaint] on August 30, 2021, when it was received as part of Imani's [appeal]." *See id.*; *see also* Dkt. 46-2 at 11–13; Dkt. 64 ¶¶ 7–8.

The state defendants also contend that the request form that Imani submitted with his appeal of the '11910 complaint is "likely . . . a fabricated document." Dkt. 69 at 10. Leiser, they explain, confirms that the handwriting at the bottom of the form is her handwriting. *Id.* (citing Dkt. 71 ¶ 9). But the state defendants contend that Leiser's purported response ("Provide copy of forged document.") is an "illogical response" to Imani's alleged note about missing his property. *Id.*; *see also* Dkt. 71 ¶ 9 (Leiser's declaration testimony that she does "not believe [that she] would have written the response . . . in response to what is written on the top of the . . . request"). To explain the apparent incongruity between Imani's request and

Leiser's response, the state defendants note that, on August 2, 2021, Leiser returned a separate inmate complaint to Imani in which he alleged that nursing staff forged his signature on a medical copay form. Dkt. 69 at 10–11 (citing Dkt. 70-1 at 2). The state defendants conclude that Imani "may have received Leiser's response to [] correspondence about that [inmate complaint] and repurposed it to try to gain traction on his appeal [of the '11910 complaint]." *Id.* at 11.

Making a dishonest statement or submitting a fabricated document to gain a litigation advantage is a serious matter, but I cannot decide these issues on the paper record alone. Therefore, I'll set the matter for an in-person hearing. The sole issues for the hearing will be: (1) whether Imani's statement that he submitted the purported request form with his resubmission of the '11910 complaint on August 3 is dishonest; and (2) whether Imani fabricated that form. I'll ask the clerk of court to set a hearing date, and to issue a writ of habeas corpus ad testificandum for Imani's appearance. I expect the state defendants to present testimony from Leiser and Alexander Engelken, who also submitted a declaration in this matter. Dkt. 46. The state defendants' witnesses may testify by videoconference if they prefer. I'll consider requests for any other witnesses to appear by videoconference. Counsel for McArdle may attend the hearing and may, along with counsel for the state defendants and Imani, present argument at the end of the hearing.

Until I decide the issues of dishonesty and fabrication, I will stay defendants' motions for summary judgment and strike the pretrial schedule (except for the trial date). I will reset the schedule if necessary after these issues have been resolved. As the hearing date approaches, the court will issue an order with instructions about how to prepare exhibit lists and present documentary evidence at the hearing.

ORDER

IT IS ORDERED that:

1. The clerk of court is directed to set an in-person hearing to address, as discussed in this order, the issues of dishonesty and fabrication, and to issue a writ of habeas corpus ad testificandum for plaintiff's appearance.

2. Defendants' motions for summary judgment on exhaustion grounds, Dkt. 44 and Dkt. 55, are STAYED.

3. The pretrial schedule (except for the trial date) is STRUCK.

Entered October 14, 2026.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge